UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS IRWIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-2926-B |
| | § | |
| OFFICER J. SANTIAGO, in his individual capacity, OFFICER R. ROBERTS, in his individual capacity, and CITY OF GARLAND, | § § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment (Doc. 26) filed by Defendants J. Santiago and R. Roberts (collectively, "the Defendant–Officers"). The Defendant-Officers, who are City of Garland police officers, seek summary judgment on Plaintiff Thomas Irwin's excessive-force claim against them, asserting they are entitled to qualified immunity. The issues at the heart of the motion are: (1) whether Irwin's driving slowly toward Officer Santiago at the time the Defendant–Officers were trying to detain him justifies their use of deadly force, and (2) whether this use of deadly force violates clearly established law.

Further, the Defendant–Officers move to exclude the testimony of one of Irwin's designated experts in the Defendant–Officers' Objection to, and Motion to Exclude, the Testimony of Roger Clark (Doc. 19).

For the reasons set forth below, the Court **GRANTS** the Defendant–Officers' summary-judgment motion (Doc. 26) and **DENIES** their motion to exclude (Doc. 19).

- 1 -

I.

BACKGROUND

This civil-rights case arises from a shooting by two officers. The Court begins its factual account with those facts upon which the parties agree, many of which are substantiated by video evidence.[1]

On June 8, 2018, while under the influence of alcohol and marijuana, Irwin began driving home with his girlfriend's two minor children in the backseat. Doc. 28, Defs.' App., 32–33. As Irwin was driving in the right lane and approaching an intersection, he turned back to look at the children. *Id.* at 35, 37–38. When he turned forward again, he veered onto the curb and collided with a tension wire, a chain-link fence enclosing a cemetery, and tombstones. *Id.* at 38–40. Irwin recalls that he veered because he saw a white four-door car in front of him and believed he might rear-end the car, Doc. 28, Defs.' App., 38, but neither video depicts a white car in front of Irwin. *See generally* Doc. 28, Body Camera; Doc. 28, Surveillance Camera. After driving into the cemetery, Irwin backed his vehicle into the roadway. *See* Doc. 28, Surveillance Camera, 00:25–00:27.

The Defendant–Officers say that they witnessed Irwin's collision from their police-marked vehicle, which was positioned in the left lane, facing forward and ahead of Irwin, at the intersection Irwin was approaching. *See id.* at 00:15–00:18. Upon observing Irwin drive into the fence, the Defendant–Officers exited their vehicle and began walking toward Irwin's vehicle with their firearms drawn. *See id.* at 00:29–00:40; Doc. 28, Body Camera, 00:13–00:17. Officer Santiago, who exited

---

[1] There are two videos from the incident: one from a body camera worn by Officer Santiago (hereinafter "Doc. 28, Body Camera"), and another from a surveillance camera (hereinafter "Doc. 28, Surveillance Camera").

from the passenger's side of the Defendant–Officers' vehicle, left the passenger door of the vehicle open toward the right lane of the road. *See* Doc. 28, Body Camera, 00:08–00:09, 00:23. The Defendant–Officers instructed Irwin to "stop the car" as they continued to walk toward Irwin's vehicle with their firearms drawn. *Id.* at 00:10–00:17. Officer Roberts stood in the left lane of the road near the driver's side of Irwin's vehicle. *See id.* Meanwhile, Officer Santiago was approaching the front of the vehicle in the right lane. *Id.* at 00:17.

When Irwin's vehicle continued rolling forward despite the Defendant–Officers' commands,[2] they collectively fired seven shots at the driver's side of Irwin's vehicle; the bullets struck Irwin's vehicle and Irwin himself. *Id.* at 00:17–00:21; Doc. 28, Defs.' App., 157; Doc. 1, Compl., ¶ 77. These shots, in total, spanned four seconds. Doc. 28, Body Camera, 00:17–00:21. At the moment when the Defendant–Officers began firing, Officer Santiago stood several feet in front of the driver's side of Irwin's vehicle, but Officer Santiago's full shadow on the pavement in front of him suggests that he was standing some distance to the side of Irwin's vehicle. *See id.* at 00:17.

After the Defendant–Officers began shooting, Irwin steered his vehicle toward the curb and partially onto the sidewalk, maneuvering his way past the Defendant–Officers. Doc. 28, Body Camera, 00:19; Doc. 28, Surveillance Camera, 00:46–00:47; Doc. 28, Defs.' App., 48–49. Irwin continued driving, so the Defendant–Officers then followed him in their vehicle to a parking lot, where City of Garland officers apprehended Irwin. Doc. 32, Pl.'s App., 4 (Body Camera Footage), 00:22–2:01. He thereafter pleaded guilty to driving while intoxicated and using his vehicle as a

---

[2] Neither side provides the Court with an estimate of the speed at which Irwin was accelerating, but from the body-camera footage, it is clear that Irwin's vehicle rolled slowly. *See* Doc. 28, Body Camera, 00:17–00:18.

deadly weapon. Doc. 28, Defs.' App., 119–20.

With this overview in mind, the Court now summarizes Officer Santiago's, Officer Roberts's, and Irwin's accounts of the moments leading up to the shooting.

Officer Santiago claims that after Irwin's collision into the cemetery, Officer Santiago noticed that Irwin "appeared upset" and "was intent upon leaving the scene[.]" Doc. 28, Defs.' App., 5. Officer Santiago explains that as he approached Irwin's vehicle, he visually cued Irwin to stop by placing his hand out, and he gave three verbal commands for Irwin to stop, but Irwin "disregarded" these commands and continued accelerating forward. *Id.* at 6. Meanwhile, the passenger door of the Defendant–Officers' vehicle remained open behind Officer Santiago. *Id.* As Irwin accelerated, "it appeared to [Officer Santiago] that" Irwin intended to run him over. *Id.* Consequently, Officer Santiago began walking backward and fired multiple rounds "in an effort to disable [Irwin] before [his vehicle] could strike [Officer Santiago.]" *Id.*

Officer Roberts's account is similar. He recalls observing Irwin's "wide-eyed, crazed look" as he approached Irwin's vehicle. *Id.* at 13–14. He too commanded Irwin to stop through a visual and verbal command. *Id.* Officer Roberts explains that as he walked near Irwin's vehicle, Officer Santiago was to Officer Roberts's left and was also commanding Irwin to stop. *Id.* at 14. When Irwin continued accelerating forward, "it appeared to [Officer Roberts] that Officer Santiago was in the path" of Irwin's vehicle and would be unable to escape this path given the location of the Defendant–Officers' vehicle behind Officer Santiago. *Id.* As a result, Officer Roberts, like Officer Santiago, fired several rounds to disable Irwin. *Id.*

Irwin, for his part, acknowledges that his intoxication during the incident might cloud his present recollection. Doc. 28, Defs.' App., 54. In his response to the Defendant–Officers' motion,

he states that neither of the Defendant–Officers was "positioned directly in front of or in the pathway of [his] vehicle." Doc. 31, Pl.'s Resp., 7–8 (citations omitted). He claims that Officer Santiago was "to the side of the front" of his vehicle, Doc. 32, Pl.'s App., 16, and that he could have continued driving forward without hitting Officer Santiago. *Id.* at 59. Nonetheless, he chose to roll up onto the curb as he continued driving to avoid the Defendant–Officers, who had begun to shoot at him. *Id.*

As a result of the shooting, Irwin filed a civil action with this Court, alleging several constitutional violations under 42 U.S.C. § 1983. *See* Doc. 1, Compl., ¶¶ 102–84. The Defendant–Officers moved to dismiss Irwin's claims against them as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), but the Court denied their motion and ordered discovery on the issue of qualified immunity. Doc. 14, Mem. Op. & Order, 1; Doc. 15, Order, 1. During discovery, the Defendant–Officers moved to exclude the testimony of one of Irwin's designated experts, and the Court deferred ruling upon the motion until its resolution of qualified immunity on summary judgment. Doc. 19, Defs.' Obj., 1; Doc. 25, Order, 1–2. The Defendant–Officers then filed their motion for summary judgment on Irwin's excessive-force claim—the only claim remaining against them—asserting that *Heck* bars the claim and that they are entitled to qualified immunity. *See* Doc. 26, Defs.' Mot., 1–2. The Defendant–Officers' summary-judgment motion, as well as their motion to exclude, is now ripe for review.

## II.

## LEGAL STANDARD

Courts must grant summary judgment "if there is no genuine dispute as to any material fact," and the party bearing the burden of proof "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law, and

a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party[.]" *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (cleaned up). Typically, the summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990) (citation omitted).

"However, a good-faith assertion of qualified immunity alters the usual summary[-]judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020) (cleaned up). Thus, where qualified immunity is raised, "[t]he plaintiff bears the burden of negating qualified immunity," but the Court draws all inferences in favor of the plaintiff. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation omitted).

"[Q]ualified immunity insulates state officials from liability [under § 1983] to the extent that the officials' actions do not violate clearly established statutory or constitutional rights." *Trent v. Wade*, 776 F.3d 368, 376–77 (5th Cir. 2015) (alterations incorporated) (citation and quotation marks omitted).[3] To defeat qualified immunity, the plaintiff must demonstrate: "(1) that the official[s] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* at 377 (citation and quotation marks omitted). Courts have discretion to determine which prong of the qualified-immunity analysis to address first. *Id.* (citations omitted).

In sum, when the Court is considering the application of qualified immunity on summary

---

[3] Under § 1983, a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who violates another person's constitutional rights is liable to the person whose rights he violated.

judgment, the burden is on the plaintiff to demonstrate a genuine dispute of material fact "as to whether the official's allegedly wrongful conduct violated clearly established law." *McCoy v. Alamu*, 950 F.3d 226, 230 (5th Cir. 2020) (citation omitted).

## III.

## ANALYSIS

A. *The Court Grants Summary Judgment in Favor of the Defendant–Officers on Irwin's Excessive-Force Claim.*

As explained below, there are genuine disputes of material fact bearing on whether the Defendant–Officers used excessive force by shooting at Irwin's vehicle. Nonetheless, because Irwin has not demonstrated that they violated clearly established law, the Court grants summary judgment to the Defendant–Officers based on qualified immunity.[4]

    1.    <u>There are genuine disputes of material fact as to whether the Defendant–Officers' use of force violated the Fourth Amendment.</u>

The Fourth Amendment confers the right to be free from "unreasonable searches and seizures[.]" U.S. Const. amend. IV. A seizure is unreasonable under the Fourth Amendment if it involves excessive force. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). To prevail on a Fourth Amendment excessive-force claim, a plaintiff must prove he suffered: (1) an injury, (2) resulting directly and only from, (3) an officer's use of objectively unreasonable force. *Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996) (citation omitted). Because the parties focus on the third element, whether the Defendant–Officers' use of force was objectively reasonable, so will the Court.

---

[4] Because the Defendant-Officers are entitled to qualified immunity, the Court need not address their alternative ground for summary judgment—that Irwin's claim is barred by *Heck*. *See* Doc. 27, Defs.' Br., 21–22.

"[T]he reasonableness inquiry . . . is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 433 (citations and quotation marks omitted). To determine whether a use of force was objectively reasonable, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (citation omitted).[5]

As a preliminary matter, Irwin concedes that the Defendant–Officers "faced . . . a serious criminal act[.]" Doc. 31, Pl.'s Resp., 18. Indeed, Irwin drove into a chain-link fence enclosing a cemetery, *see generally* Doc. 28, Surveillance Camera, and he pleaded guilty to driving while intoxicated and using his vehicle as a deadly weapon. Doc. 28, Defs.' App., 119–20. Nevertheless, the Court notes that the Defendant–Officers pursued Irwin for crashing into a fence and attempting to flee the scene—this is not violent conduct.

Irwin also "concedes that he was fleeing from the police," Doc. 31, Pls.' Resp., 18, so it is undisputed that he was "attempting to evade arrest by flight." *Hogan*, 722 F.3d at 734 (citation omitted).

The primary dispute pertains to the remaining factor—whether Irwin "pose[d] an immediate threat to the safety of the officers or others[.]" *Id.* This factor, the "most important" one, requires the Court to evaluate "whether it was reasonable for [the Defendant–Officers] to believe that [Irwin]

---

[5] To the extent this analysis involves the Defendant–Officers' actions, the Court considers each Officer's conduct individually. *See Meadours v. Ermel*, 483 F.3d 417, 421–22 & n.3 (5th Cir. 2007) (citations omitted).

posed a threat to [the Defendant–Officers] or the civilians on the street." *Malbrough v. Stelly*, 814 F. App'x 798, 803–04 (5th Cir. 2020) (per curiam). In making this determination, the Court must account "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Sanchez v. Edwards*, 433 F. App'x 272, 275 (5th Cir. 2011) (per curiam) (quoting *Graham*, 490 U.S. at 396–97).

Below, the Court first rejects the Defendant–Officers' passing argument that Irwin posed an immediate threat to the public. *See* Doc. 27, Defs.' Br., 13. Thereafter, the Court examines whether the Defendant–Officers reasonably believed Irwin posed an immediate threat to Officer Santiago's safety. Concluding that there are genuine disputes of material fact bearing on this issue, the Court holds that a jury could find that the Defendant–Officers violated the Fourth Amendment.

> a. *Any potential threat Irwin posed to other motorists does not render the Defendant–Officers' use of force reasonable as a matter of law.*

The Court rejects the Defendant–Officers' contention that they acted reasonably based on a perceived threat to other motorists. *See* Doc. 27, Defs.' Br., 13. Though a fleeing motorist may pose a threat to the public so substantial that it justifies the use of deadly force, *see Plumhoff v. Rickard*, 572 U.S. 765, 776 (2014), the Supreme Court has not "declare[d] open season on suspects fleeing in motor vehicles." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 414 (5th Cir. 2009). Indeed, "[n]early any suspect fleeing in a motor vehicle poses some threat of harm to the public." *Id.* at 415. Thus, the Court must "delve into the facts and circumstances of each case" to determine "whether the fleeing suspect posed such a threat that the use of deadly force was justifiable." *Id.* at 415, 416.

Viewing the facts in the light most favorable to Irwin, a jury could conclude the

- 9 -

Defendant–Officers were unreasonable in shooting at Irwin's vehicle based on his threat to the public. Irwin crashed into a fence, backed up, and continued driving forward. Further, he claims that he thereafter drove onto the curb to maneuver *around* the Defendant–Officers, thereby avoiding harm to the only pedestrians in sight—the Defendant–Officers. The Court recognizes that numerous cars traveled on the same road as Irwin during the events in question. *See generally* Doc. 28, Body Camera; Doc. 28, Surveillance Camera. But Irwin's driving was not "so menacing . . . that any use of force in an attempt to stop it would be objectively reasonable as a matter of law." *Lytle*, 560 F.3d at 416. Accordingly, a jury could conclude Irwin did not pose an immediate threat to the public when the Defendant–Officers were shooting. *Cf. Plumhoff*, 572 U.S. at 776–77 (finding a grave risk to the public where the fleeing suspect led officers on a chase exceeding 100 miles per hour and evaded the officers' attempt to block his car in); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (concluding the fleeing motorist posed a "great risk of serious injury" to bystanders during a "Hollywood-style car chase of the most frightening sort").

> b. *There are genuine disputes of material fact regarding whether the Defendant–Officers reasonably believed that Officer Santiago faced an immediate threat.*

For cases involving deadly force by a pedestrian–officer against an individual fleeing by vehicle, the Fifth Circuit has identified two more specific considerations: "(1) the limited time an officer has to respond to the threat from the vehicle; and (2) the closeness of [an] officer to the projected path of the vehicle." *Sanchez*, 433 F. App'x at 275 (alterations incorporated) (citation and quotation marks omitted). To assess the perceived threat to Officer Santiago, the Court addresses each consideration in turn.

Here, the Defendant–Officers exited their vehicle, walked toward Irwin's vehicle, and asked

Irwin to stop his vehicle, yet he then continued to drive forward—all within about seventeen seconds, at which point the Defendant–Officers began shooting. *See* Doc. 28, Body Camera, 00:01–00:17. The Defendant–Officers fired all seven shots within about four seconds. *Id.* at 00:17–00:21. Thus, at some point within the seventeen-second confrontation, the Defendant–Officers realized Irwin would not heed their commands to stop and fired several shots in quick succession. Viewing the body-camera footage in hindsight, the seventeen seconds seem generous—this window appears to be enough time for the Defendant–Officers to address any perceived threat in a less deadly manner. Nevertheless, "[w]hat constitutes reasonable action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Stroik v. Ponseti*, 35 F.3d 155, 158–59 (5th Cir. 1994) (citation and quotation marks omitted). Recognizing that the Defendant–Officers faced a limited time to respond, the Court concludes that the passage of several seconds leading up to the shooting does not indicate unreasonableness.

But with respect to Officer Santiago's proximity to the path of Irwin's vehicle, genuine factual disputes remain. Namely, based on the summary-judgment evidence, the Court cannot determine the distance between Officer Santiago and Irwin's vehicle at the moment the Defendant–Officers began firing. Although the parties provide Officer Santiago's body-camera footage, this footage fails to demonstrate how far in front of and how far to the side of Irwin's vehicle Officer Santiago stood. Further, the footage depicts Officer Santiago's shadow to the side of Irwin's vehicle when the Defendant–Officers began shooting, suggesting he was not in the path of vehicle. Finally, Irwin claims that Officer Santiago was not in the vehicle's path. Viewing all of this evidence in the light most favorable to Irwin, a jury could conclude that the Defendant–Officers were unreasonable in

their belief that Officer Santiago stood in the vehicle's path.

Likewise, the Court cannot discern the distance between Officer Santiago and the passenger door of the Defendant–Officers' vehicle behind him. This distance is material to whether it was reasonable for each Defendant–Officer to believe that Officer Santiago was stuck in the path of Irwin's vehicle due to the presence of the open passenger door. Put differently, depending on this distance, a jury may find that the Defendant–Officers could not reasonably believe Officer Santiago was trapped between Irwin's vehicle and the Defendant–Officers' vehicle.

In sum, there are genuine factual disputes regarding Officer Santiago's position that bear on whether the Defendant–Officers reasonably believed that Officer Santiago faced an immediate threat at the time of the shooting. These disputes preclude the Court from finding that the Defendant–Officers acted reasonably as a matter of law. Thus, Irwin has created a fact issue regarding the Defendant–Officers' excessive-force violation of the Fourth Amendment.

2. The Defendant–Officers did not violate clearly established law.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation and quotation marks omitted). While a case need not be "directly on point, . . . existing precedent must "place[] the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted). The Supreme Court has "repeatedly" admonished courts "not to define clearly established law at a high level of generality." *Id.* at 742 (citations omitted). Courts must determine, "in light of the specific context of the case," "whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12 (emphasis in original) (citations and quotation marks omitted). "Such specificity is especially important in the Fourth Amendment

context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, [such as] excessive force, will apply to the factual situation the officer confronts." *Id.* (alteration incorporated) (citation and quotation marks omitted).

Nonetheless, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The ultimate inquiry is whether the officers have "fair warning"—the Court must decide whether "prior decisions gave reasonable warning that the conduct . . . at issue violated constitutional rights." *Trent*, 776 F.3d at 383 (citations and quotation marks omitted).

Here, Irwin did not show such fair warning. In the first case Irwin cites, *Lytle*, the Fifth Circuit concluded that a shooting defendant–officer's entitlement to qualified immunity hinged on genuine issues of material fact. *See* 560 F.3d at 418. According to the plaintiff in *Lytle*, his car collided with another car, at which point the defendant–officer stopped his vehicle behind the plaintiff's. *Id.* at 409. Thereafter, the plaintiff began backing up toward the defendant–officer's car, started to drive away, and "made it three or four houses down the block" before the defendant–officer fired at the plaintiff's vehicle without warning. *Id.* Further, "there were no bystanders in the path of the vehicle[.]" *Id.* The defendant–officer, on the other hand, claimed that he shot "as or immediately after the [plaintiff] was backing up toward him[.]" *Id.* at 412. Under the plaintiff's account, the Fifth Circuit reasoned, "a jury could conclude that [the defendant–officer's] conduct . . . was unreasonable." *Id.* at 413. On the other hand, if the defendant–officer's account was true, "he would likely be entitled to qualified immunity." *Id.* at 412. Due to this genuine, material factual dispute, the Fifth Circuit decided "that a jury could determine that [the defendant–officer] acted unreasonably . . . ." *Id.* at 417.

Irwin's attempt to rely upon *Lytle* fails. Irwin asserts that *Lytle* clearly establishes that, under Irwin's "version of the events," the Defendant–Officers' conduct violated Irwin's rights. *See* Doc. 31, Pl.'s Resp., 25–26. But the conduct in *Lytle* that the Fifth Circuit held could be unreasonable included shooting at a vehicle situated three-to-four houses in front of the defendant–officer, without prior warning, when no one stood in the path of the vehicle. *See* 560 F.3d at 409. This holding does not provide notice that it is unlawful to shoot at a vehicle that is rolling forward, failing to heed officers' commands to stop, as an officer stands "to the side of the front" of the vehicle. Doc. 32, Pl.'s App., 16, 57–58; *see Sanchez*, 433 F. App'x at 276 (clarifying that *Lytle*'s holding is "based . . . on evidence suggesting that the officer was three-to-four houses away from the vehicle when he fired his weapon and that the vehicle was moving away from, rather than towards, him at the time" (citation omitted)). Thus, *Lytle* fails to provide "fair warning" that the Defendant–Officers' conduct violated Irwin's rights. *See Trent*, 776 F.3d at 383 (citations omitted).

Nor does the second case cited by Irwin, *Tennessee v. Garner*, 471 U.S. 1 (1985), serve as clearly established law here. *See* Doc. 31, Pl.'s Resp., 26 (citation omitted). In *Garner*, the Supreme Court held that "deadly force is only permissible where the officer has probable cause to believe that the suspect poses a threat of serious physical harm . . . ." *Mullenix*, 577 U.S. at 13 (citation omitted). But as reiterated in *Mullenix*, the Supreme Court has rejected the "use of *Garner*'s 'general' test for excessive force" as clearly established law. *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). Rather, courts must determine "whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation [he] confronted[.]" *Id.* (citation and quotation marks omitted). Irwin has not pointed out any precedent prohibiting conduct similar to that of the Defendant–Officers.

Indeed, when analyzing the use of deadly force in response to a moving vehicle, the Fifth Circuit has found the force reasonable on numerous occasions. *See, e.g.*, *Sanchez*, 433 F. App'x at 273–75 (concluding the defendant–officers acted reasonably when they shot at the plaintiff's car as it accelerated in the direction of one of the officers, who was "positioned near the front of the car"); *Sierra*, 366 F. App'x at 524 (holding no constitutional violation occurred where the defendant–officers fired after the vehicle "accelerated toward [an officer] who was approaching the vehicle on foot" and standing "directly in front of [the] vehicle"). Though these cases are not analogous in all material respects to the one at hand, they further bolster the Court's conclusion that the Defendant–Officers did not have "fair warning" that their conduct violated the Fourth Amendment. *See Trent*, 776 F.3d at 383 (citations omitted).

The Court recognizes that other circuit courts have found a pedestrian–officer's shooting unreasonable where, under the plaintiff's version of the facts, the pedestrian–officer was not in the path of the fleeing suspect's slow-moving vehicle. *See, e.g.*, *Eberhardinger v. City of York*, 782 F. App'x 180, 182, 185–86 (3d Cir. 2019) (unpublished) (concluding that because a factual dispute existed as to whether the defendant–officer stood to the left of the plaintiff's vehicle at the time of firing, the defendant–officer was not entitled to qualified immunity); *Godawa v. Byrd*, 798 F.3d 457, 465–66 (6th Cir. 2015) (declining to award qualified immunity on summary judgment where, "viewing the facts in the light most favorable to" the plaintiffs, the defendant–officer "was positioned near the rear passenger side" of the suspect's vehicle when he fired); *Smith v. Cupp*, 430 F.3d 766, 774, 777 (6th Cir. 2005) (finding "a jury could conclude that [the defendant–officer] fired as he ran toward the driver side of [the plaintiff's car] after the car passed him" and thus that the defendant–officer was not entitled to qualified immunity).

Nevertheless, the Fifth Circuit sets a high bar for out-of-circuit authority to clearly establish the law—there must be a "robust" consensus among the other circuits. *See Morrow v. Meachum*, 917 F.3d 870, 879–80 (5th Cir. 2019) (citation omitted). And the analogous cases from other circuits do not meet this bar.

Specifically, the most factually similar case, *Eberhardinger*, post-dates the Defendant–Officers' conduct. *See Morrow*, 917 F.3d at 880 (citation omitted) (noting that the law must be clearly established at the time of the defendant's conduct). And the relevant cases from the Sixth Circuit, *Cupp* and *Godawa*, appear to rest on general rules from *Garner* regarding excessive force. *See Cupp*, 430 F.3d at 776 (deriving general rules from *Garner* to serve as clearly established law); *Godawa*, 798 F.3d at 468 (relying on *Cupp* for clearly established law). As previously discussed, the Supreme Court has rejected this use of *Garner*. *See supra* at 14; *see also Morrow*, 917 F.3d at 880 (citations omitted).

The Sixth Circuit in *Cupp* appears to also rely upon the "obvious" nature of the defendant–officer's constitutional violation, *see* 430 F.3d at 776, an approach that the Fifth Circuit has utilized. *See Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019) (en banc) (explaining that the Supreme Court still permits application of *Garner*'s general rule "in obvious cases"). But even assuming the Sixth Circuit's analysis of clearly established law in *Cupp* withstands *Mullenix*, "the Sixth Circuit does not represent a consensus." *Morrow*, 917 F.3d at 880; *see also Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) (rejecting the plaintiff's reliance "on an out-of-circuit case" to clearly establish the law).

Irwin thus has not met his "sky-high" burden of overcoming qualified immunity. *See Cole*, 935 F.3d at 471 (Willett, J., dissenting). As a result, regardless of whether the Defendant–Officers used excessive force, they are entitled to qualified immunity, and the Court **GRANTS** summary judgment

in their favor.

B.  *The Court Denies the Defendant–Officers' Motion to Exclude the Testimony of Irwin's Designated Expert.*

During discovery, the Defendant-Officers filed a motion to exclude the testimony of Roger Clark, who was designated by Irwin as an expert on the issue of qualified immunity. *See* Doc. 19, Defs.' Obj., 1. In their motion, the Defendant–Officers ask the Court to both exclude Clark's testimony in its entirety and order, pursuant to Federal Rule of Civil Procedure 26(b)(4)(E), that the Defendant–Officers need not pay Clark's invoice for the time spent deposing him. *Id.* at 12–13.

To the extent the Defendant–Officers seek exclusion of Clark's testimony, the Court **DENIES** their motion as **MOOT** because Irwin has not offered, nor has the Court considered, any of Clark's opinions.

And insofar as the Defendant–Officers seek relief under Federal Rule of Civil Procedure 26(b)(4)(E), the Court declines to award such relief. The Defendant–Officers have not provided any legal authority suggesting that their payment of Clark's invoice would amount to the "manifest injustice" required for the Court to exempt payment. *See* Fed. R. Civ. P. 26(b)(4)(E). In its discretion, the Court declines to find manifest injustice here. Accordingly, the Court **DENIES** the Defendant–Officers' request to be exempt from paying Clark's fees.

## IV.

## CONCLUSION

In sum, there are genuine disputes of material fact bearing on whether the Defendant–Officers used excessive force. But even assuming they did, they did not violate clearly established law. Accordingly, the Defendant–Officers are entitled to qualified immunity, and the

Court **GRANTS** their summary-judgment motion (Doc. 26). Moreover, the Court **DENIES** the Defendant–Officers' motion to exclude (Doc. 19).

SO ORDERED.

SIGNED: January 8, 2021.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE